IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

FILE NO. 1:15cv 288

THE BILTMORE COMPANY, a )
Delaware corporation, )
 )
　　　　　Plaintiff, )
 )
vs. )
 )
NU U, INC.; TOP 10 PROM, LLC )
d/b/a Merle Norman of Asheville, )
NC and Top 10 Prom; and top10, )
LLC d/b/a Merle Norman of )
Asheville, NC and Top 10 Prom, )
 )
　　　　　Defendants. )

FILED
ASHEVILLE, N.C.

DEC 2 3 2015

U.S. DISTRICT COURT
W. DIST. OF N.C.

**COMPLAINT FOR TRADEMARK INFRINGEMENT, CYBERPIRACY, AND UNFAIR AND DECEPTIVE TRADE PRACTICES**

NOW COMES the Plaintiff The Biltmore Company ("Biltmore"), by and through counsel, complaining of the Defendants as follows:

**PARTIES AND JURISDICTION**

1.　　The Biltmore Company ("Biltmore") is a corporation organized under the laws of Delaware with its principal place of business within Buncombe County at One North Pack Square, Asheville, North Carolina 28801.

2.　　Defendant Nu U, Inc. ("Nu") is a North Carolina corporation with a principal place of business in Buncombe County, North Carolina.

3. Defendant Top 10 Prom, LLC ("Prom") is a limited liability company organized under the laws of North Carolina with its principal place of business in Buncombe County, North Carolina.

4. Defendant top10, LLC ("top10") is a limited liability company organized under the laws of North Carolina with its principal place of business in Buncombe County, North Carolina.

5. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338(a–b), and 15 U.S.C. § 1121. This Court has related claim and supplemental jurisdiction over the state law tort claims alleged in this Complaint pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(b).

6. This Court has personal jurisdiction over the Defendants because Nu, Prom, and top10 maintain their principle places of business within North Carolina.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b–c) because the Defendants are residents of both North Carolina and the Western District of North Carolina, a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this district, and the Defendants' principle places of business are within the district.

## FACTUAL ALLEGATIONS

8. Biltmore owns and operates Biltmore Estate, a historic multi-purpose tourist destination covering 8,000 acres in Buncombe County, North Carolina. Biltmore Estate hosts over 1.3 million paying visitors each year from around the world.

9. Biltmore Estate encompasses: Biltmore House and Biltmore Gardens (available for touring and special events); approximately 4,500 acres of undeveloped forest (a large portion of which is open for hiking, canoeing, and horseback riding); Biltmore Winery (a fully functional

wine-making facility); Antler Hill Village (which includes a farm and outdoor adventure center open for public touring); The Inn on Biltmore Estate (a large upscale hotel with dining and conference amenities); Village Hotel on Biltmore Estate (Biltmore's newest hotel providing comprehensive lodging amenities); numerous dining facilities (including Bistro, Cedric's Tavern, Deerpark Restaurant, Smokehouse, Stable Café, The Bake Shop, The Conservatory Café, and The Courtyard Market); as well as multiple retail facilities that sell Biltmore branded merchandise, apparel, and jewelry. Biltmore also maintains a significant online presence through its website, www.biltmore.com, which provides a portal for ticket purchases, wedding planning, hotel room and dining reservations, and merchandise sales.

10. Included in its complement of comprehensive guest services, Biltmore provides an extensive array of award winning wedding and bridal services. These services include, among others: nationally recognized wedding venue and reception locations within the Estate; comprehensive wedding packages for weddings held on the Estate; world-class catering options for wedding rehearsals, bridesmaid luncheons, receptions, and morning-after brunches; an extensive offering of outdoor activities for wedding guests, including Biltmore's: Land Rover® Experience Driving School, Orvis® Fly-Fishing School, Sporting Clays School, French Broad River float trips, spa and beauty packages, horseback riding, hiking, biking, carriage rides, and Segway tours; an Estate Wedding Team of bridal professionals to assist couples with the planning and execution of their wedding; and a comprehensive suite of lodging options for the wedding party and guests through Biltmore's exclusive Inn on Biltmore Estate, Village Hotel on Biltmore Estate, the Cottage on Biltmore Estate, and local area accommodation partners.

11. Biltmore has been recognized as "one of the USA's most beautiful destination wedding venues" by Brides.com (Exhibit 1); was selected by the Knot.com as a Best of Wedding

3

Venue, 2013 Editors' Pick, and 2014 Dream Wedding Location (Exhibit 2); received first place honors by BorrowedandBlue.com for Best All-Around Wedding Venue, Best Venue for Grand Weddings, and Best Fall Wedding Id.; and hosted Engage!13, a luxury wedding business summit that brings together the most innovative minds in the wedding industry from across the United States. Id.

12. Biltmore will also host in 2016 the "Fashionable Romance: Wedding Gowns in Film" exhibit, which will feature wedding gowns from over nineteen (19) films and cover over 300 years of bridal gown and wedding history, including styles from 1645 to 1935.

13. As a result of Biltmore's reputation as a premier wedding services provider, the Estate hosts approximately 180–200 weddings per year for couples from around the globe. These weddings generate significant revenues for the company.

14. Biltmore actively markets its wedding services, business, facilities, merchandise, apparel, and spa and beauty experiences online, through social media, and throughout western North Carolina and the entire United States. Screenshots of Biltmore's advertised wedding services are attached as Exhibits 3–6, and 2, and are incorporated herein by reference.

15. Since Biltmore Estate opened to the public in 1930, Biltmore has gone to great expense to ensure that Biltmore House and the entire Estate is as elegant, pristine, historically authentic, and visitor-friendly as possible. As a result, the architecture, interior design, and decor of Biltmore House and Biltmore Estate, have received widespread international acclaim for their historical importance and well-preserved beauty.

16. Biltmore has registered and owns the trademarks BILTMORE®, BILTMORE ESTATE®, and several other iterations of the name "Biltmore" (hereinafter the "Mark(s)"). Biltmore has used these marks in commerce for over fifty (50) years.

17. Biltmore has licensed these Marks (as well as images, interior designs, and other features of Biltmore House and Biltmore Estate) to various manufacturers, artisans, and other businesses including department store retailer Belk® and furniture company Fine Furniture Design®. Biltmore continues to actively expand its home licensing efforts into additional product and service categories.

18. Upon information and belief, Defendant Nu operates a bridal boutique under the name "Biltmore Bride Prom & Tux" ("Biltmore Bride") in Asheville, North Carolina and owns the website http://www.biltmorebridal.com, which advertises its services.

19. Biltmore became aware that Nu was marketing and offering its services under the name "Biltmore Bride" in or around November 2015. A screenshot of Defendant Nu's website is attached as Exhibit 7 and a photo of an advertisement in its storefront is attached as Exhibit 8 and incorporated herein by reference.

20. Nu states on its website that "Biltmore Bride is a full service bridal boutique carrying . . . designer gowns and accessories from around the world" as well as a "jewelry collection feature[ing] heirloom quality necklaces, earrings and bracelets in designs ranging from modern sleek to vintage chic." (Exhibit 7.) Nu also purports to offer trained professionals to assist in the purchase process. Id.

21. In addition to using Biltmore's Mark, Nu utilizes a font in its name that is nearly identical to the font used by Biltmore (a comparison of the Biltmore® trademark and Nu's name is attached as Exhibit 9).

22. Nu also maintains a Facebook® page that highlights its services under the name "Biltmore Bride." A screenshot of Defendant Nu's Facebook® page is attached as Exhibit 10 and incorporated herein by reference.

5

23. As part of its social media advertising, Nu started utilizing the hashtag "#biltmorebride" in its Facebook® and Instagram® postings on or around November 2, 2015. (Exhibit 10; Exhibit 11; Exhibit 12.)

24. The use of a hashtag allows for social media postings to be categorized together by keyword. When a person searches for a particular keyword, such as "biltmorebride," all postings with the same or similar hashtag are then produced in the search results. For example, when a individual interested in wedding services provided by Biltmore searches for "#biltmorebride" on Facebook®, every posting with that hashtag will appear in the results, including postings from Biltmore, guests of Biltmore who hold their weddings at the Estate, and wedding industry professionals who work events held at Biltmore. (Exhibit 13; Exhibit 14; Exhibit 15.)

25. By utilizing the hashtag "#biltmorebride," Nu intentionally advertises in a way that places its advertisements next to ads and posts from Biltmore. Such proximity leads customers to incorrectly assume that its products and services are associated with Biltmore or Biltmore Estate and might be endorsed by Biltmore. Biltmore has utilized the hashtag "#biltmorebride" since September 2014.

26. Upon information and belief, Defendants Prom and top10 do business under their own organized names as well as the name Merle Norman of Asheville NC and Top 10 Prom.

27. Upon information and belief, Prom and top10 own the website http://www.mnprom.com/, which advertises their services. A screenshot of Defendant Prom and top10's website is attached as Exhibit 16.

28. At their store on Tunnel Road, Prom and top10 advertise that they are the "Home of Biltmore Bride Prom & Tux." (Exhibit 8.) Additionally, Prom and top 10 advertise that they sell prom dresses and associated accessories. (Exhibit 17.)

29. Prom and top10 also maintain a Facebook® page that highlights their services under the name Merle Norman of Asheville, NC. A screenshot of Defendant Prom and top10's Facebook® page is attached as Exhibit 18.

30. Upon information and belief, Nu, Prom, and top10 are all owned or operated by David and Denise Knapp.

31. Through counsel, Biltmore notified David Knapp of Nu's infringing use of Biltmore's trademark and requested that Nu discontinue its use of the Mark. A copy of Biltmore's notice letter is attached as Exhibit 19 and incorporated herein by reference.

32. By marketing and offering their services under the Biltmore® Mark, the Defendants are willfully and intentionally trading off the goodwill and fame of Biltmore.

33. Upon information and belief, customers seeing the Defendants' infringing signage, advertisements, website, Facebook® pages, Instagram® posts, and other advertising, incorrectly assume that the Defendants' services are in fact associated with Biltmore or Biltmore Estate and have been endorsed by Biltmore.

34. Biltmore expects that there is and will continue to be customer confusion between the Defendants' infringing signage and advertisements and Biltmore. As noted above, Biltmore offers a broad array of wedding services and customers who see the Defendants' website, Facebook® pages, Instagram® posts, and note the proximity of the Defendants' store to Biltmore are likely to confuse those services with those provided or licensed by Biltmore.

7

35. The Defendants' particular use of the Biltmore® Mark in their marketing and branding efforts shows an intention by Defendants to trade on the goodwill, name, and value of Biltmore without having to obtain a license or other permission.

36. Upon information and belief, and at all relevant times, the Defendants have been aware of Biltmore's proprietary interest in the distinctive and unique trademarks associated with the Biltmore® Mark and have willfully and intentionally infringed on those trademark rights.

## COUNT ONE
## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

37. The allegations in paragraphs 1–36 of this Complaint are realleged as though fully set forth herein.

38. Biltmore has registered and owns its Marks under the Lanham Act.

39. As described above, the Defendants' use the Mark in commerce to advertise, promote, market, and sell their goods and services throughout the United States, including North Carolina.

40. The Defendants use has caused and is likely to continue to cause confusion or mistake and deceives purchasers into associating the Defendants' businesses, products, and services with Biltmore.

41. The Defendants are using Biltmore's Marks without authorization.

42. Upon information and belief, at the time the Defendants began using the Marks, the Defendants knew of Biltmore's Marks' prior adoption, ownership, use, fame and the valuable goodwill and reputation acquired by Biltmore's use and ownership of the Marks.

43. The Defendants acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

44. The Defendants' acts also constitute false designations of association with Biltmore or otherwise are an infringing use in violation of 15 U.S.C. §§ 1125(a).

45. As a direct and proximate result of the Defendants' wrongful acts, Biltmore has suffered and continues to suffer damage to its business reputation and goodwill. Upon information and belief, unless restrained, the Defendants will continue to use tradenames confusingly similar to Biltmore's Marks, which will cause immediate and irreparable harm. Biltmore has no adequate remedy at law; accordingly, Biltmore is entitled to an injunction restraining: the Defendants; their officers, agents and employees; and all persons acting in concert with the Defendants from engaging in further acts of trademark infringement.

46. Biltmore is further entitled to recover from the Defendants the actual damages that it sustained or is likely to sustain as a result of the Defendants' wrongful acts. Biltmore is presently unable to ascertain the full extent of the monetary damages that it has suffered or is likely to suffer by reason of the Defendants' acts of trademark infringement.

47. Biltmore is further entitled to recover from the Defendants the gains, profits, and advantages the Defendants have obtained as a result of their wrongful acts. Biltmore is presently unable to ascertain the full extent of the gains, profits, and advantages that Defendant has realized by its acts of trademark infringement.

48. Because of the willful nature of Defendant's wrongful acts, Biltmore is entitled to treble damages under 15 U.S.C. § 1117.

49. Biltmore is further entitled to its attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## COUNT TWO
## CYBERPIRACY

50. The allegations in paragraphs 1–49 of this Complaint are realleged as though fully set forth herein.

51. Biltmore has registered and owns the Biltmore® Mark under the Lanham Act.

52. Defendant Nu has demonstrated a bad faith intent to profit from the distinctive Biltmore® Mark by registering and using the domain name www.biltmorebride.com, which is confusingly similar to the Biltmore® Mark.

53. Pursuant to 15 U.S.C. § 1125(d)(1)(C), Defendant Nu's bad faith cyber piracy entitles Biltmore to an order directing the forfeiture or cancelation of the domain name www.biltmorebride.com or the transfer of the name to Biltmore.

54. Additionally, Biltmore is entitled to injunctive relief under 15 U.S.C. §1116 and the recovery of damages pursuant to 15 U.S.C. §1117.

## COUNT THREE
## COMMON LAW TRADEMARK INFRINGEMENT

55. The allegations in paragraphs 1–54 of this Complaint are realleged as though fully set forth herein.

56. Biltmore has a protected legal right in its Marks.

57. Biltmore has used the Biltmore® mark in commerce for over one hundred (100) years. In particular, among other merchandise, Biltmore has specifically used the Biltmore® Mark in the sale of apparel and jewelry.

58. The Defendants started using the Biltmore® Mark after Biltmore and have used the Mark in such a way as to confuse consumers.

59. The Defendants also use a tradename that is so similar to Biltmore's Mark that it has or is likely to confuse consumers.

60. Biltmore has been damaged by the Defendants' use of the Mark and is entitled to injunctive relief.

## COUNT FOUR
## UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER N.C. GEN. STAT. § 75-1.1

61. The allegations in paragraphs 1–60 of the Complaint are realleged as though they were fully set forth herein.

62. The Defendants are willfully and intentionally using Biltmore's Marks to unlawfully trade off Biltmore's goodwill and reputation. These actions constitute an unfair method of competition and unfair and deceptive act or practice that occurs in and affects commerce.

63. The Defendants' actions have proximately caused injury to Biltmore in an amount to be determined at trial.

64. Pursuant to N.C. Gen. Stat. § 75-16, Biltmore is entitled to have the damages caused by the Defendants trebled.

65. Pursuant to N.C. Gen. Stat. § 75-16.1, Biltmore should be awarded attorneys' fees for prosecution of this case.

## PRAYER FOR RELIEF

WHEREFORE, The Biltmore Company prays to the Court for the following relief:

1. That the Defendants be preliminarily and permanently enjoined from using Biltmore's Marks pursuant to 15 U.S.C. 1116;

2. For a judgment against the Defendants for all damages suffered by Biltmore as a result of the Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a);

3. That the damages sustained by Biltmore be trebled pursuant to 15 U.S.C. § 1117(a) and N.C. Gen. Stat. § 75-16;

4. That the Defendants disgorge to Biltmore all profits earned by the Defendants during its infringement of Biltmore's trademarks and that such award be enhanced by the Court as it considers just, pursuant to 15 U.S.C. § 1117(a);

5. That the Defendants compensate Biltmore for all reasonable attorneys' fees and costs incurred by Biltmore in the furtherance of this action pursuant to 15 U.S.C. § 1117(a) and N.C. Gen. Stat. § 75-16.1;

6. For such other and further relief deemed by the Court to be just and proper, including but not limited to any further relief pursuant to 15 U.S.C. § 1117; and

7. For a trial by jury on all issues of material fact.

This the 23rd day of December 2015.

OF COUNSEL:
J. Bennett Mullinax
J. Bennett Mullinax, LLC
P.O. Box 26029
Greenville, SC 29616-1029

/s/ Wyatt S. Stevens
Wyatt S. Stevens
N.C. Bar No.: 21056
John D. Noor
N.C. Bar No.: 43102
ROBERTS & STEVENS, P.A.
One West Pack Square, Ste. 1100
P.O. Box 7647
Asheville, North Carolina 28802
Attorneys for Plaintiff
Telephone: (828) 258-6992
wstevens@roberts-stevens.com