| | |
|---|---|
| THE BILTMORE COMPANY, a Delaware Corporation )<br><br>Plaintiff, )<br><br>vs. )<br><br>NU U, INC., )<br><br>Defendant. ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Dismiss both of the Defendant's counterclaims pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. [Doc. 35].

## I. PROCEDURAL BACKGROUND

The instant case involves a trademark dispute between the Plaintiff, The Biltmore Company, and the Defendant, NU U, Inc., that arose when the Defendant opened a retail store called "Biltmore Bride Prom & Tux" just a few miles away from the entrance to The Biltmore Estate in Asheville, North Carolina. [See Doc. 36 at 2]. On December 23, 2015, the Plaintiff filed a Complaint against the Defendant asserting federal claims for trademark

infringement and cyberpiracy, as well as state law claims for unfair and deceptive trade practices. [Doc. 1].

On April 5, 2016, with leave from this Court and the Defendant's consent, the Plaintiff filed an Amended Complaint presenting five counts against the Defendant. [Doc. 29]. In Counts I and IV, the Plaintiff alleges that certain uses of BILTMORE by the Defendant infringe upon its federally registered trademarks in violation of 15 U.S.C. §§ 1114 and 1125(a). [Id. at ¶¶ 73-89, 120-34]. In Counts II and III, the Plaintiff alleges that the Defendant's use of BILTMORE in connection with wedding related services, retail sales, and retail sales of branded merchandise constitutes false designation of origin in violation of 15 U.S.C. § 1125(a). [Id. at ¶¶ 90-119]. In Count V, the Plaintiff alleges that the Defendant's use of domain names containing BILTMORE amounts to cybersquatting under 15 U.S.C. § 1125(d). [Id. at ¶¶ 135-39].

Particularly relevant to the instant motion, the Plaintiff alleges that it owns, among other federally registered trademarks, U.S. Trademark Registration 3,855,102 for BILTMORE in connection with jewelry, and that it sells jewelry in connection with that trademark. [Doc. 29 at ¶¶ 121, 127; Doc. 29-5]. The Plaintiff alleges that the Defendant is also using BILTMORE, in commerce, in connection with the sale of jewelry, without the Plaintiff's

2

consent. [Doc. 29 at ¶¶ 124, 132]. Finally, the Plaintiff alleges that the Defendant's use of BILTMORE in commerce is likely to cause confusion. [Id. at ¶ 133]. Specifically, the Plaintiff alleges that the Defendant opened a retail store where it sells various goods, including jewelry, watches, soaps, perfumes, cosmetics, and lotions under the name, "Biltmore Bride Prom & Tux." [Id. at ¶¶ 127, 129]. The Plaintiff further alleges that both it and the Defendant advertise their goods through common channels (internet and social media), in common geographic areas, to a common class of consumers, using graphics below, which are similar:



[Id. at ¶¶ 60, 65, 67, 83].

On April 26, 2016, the Defendant filed its Answer and Counterclaim, asserting two counterclaims: (1) a claim for a declaratory judgment of non-infringement pursuant to 28 U.S.C. § 2201 et seq. and (2) a claim for unfair competition and unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"). [Id. at ¶¶ 27-41].

On May 20, 2016, the Plaintiff filed the instant Motion to Dismiss both of the Defendant's counterclaims pursuant to Rules 12(b)(6) and 12(c) of the

Federal Rules of Civil Procedure.  [Doc. 35].  On June 20, 2016, the Defendant filed its Response in Opposition [Doc. 38], and on June 30, 2016, the Plaintiff replied thereto.  [Doc. 40].

Having been fully briefed by the parties, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6).  Butler v. United States, 702 F.3d 749, 751-52 (4th Cir. 2012).

The central issue for resolving a Rule 12(b)(6) motion is whether the counterclaims state a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a claim but it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

In considering Plaintiff's Motion to Dismiss, the Court accepts the allegations in the Defendant's counterclaims as true and construes them in the light most favorable to the Defendant.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli,

588 F.3d at 190–92.  Although the Court accepts well-pleaded facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

A complaint will survive a Rule 12(b)(6) challenge if it contains sufficient factual allegations to suggest the required elements of a cause of action.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Nor will mere labels and legal conclusions suffice.  Id.  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662 (2009).

## III. DISCUSSION

### A. Declaratory Judgment of Non-Infringement

In its Answer and Counterclaim, the Defendant seeks a declaration from this Court "that Defendant has not infringed Plaintiff's trademarks or any common law rights of Plaintiff."  [Doc. 34 at ¶ 25].  In the instant motion, the Plaintiff seeks to dismiss that claim, arguing that it is redundant to the Plaintiff's own claims of infringement.  [Doc. 36 at 8-10].

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The issuance of a declaratory judgment is committed to the sound discretion of the district court. Centennial Life Inso. Co. v. Poston, 88 F.3d 255, 256-58 (4th Cir. 1996).

Pursuant to its discretion, a court may dismiss a declaratory counterclaim that is the "mirror image" of the Complaint. See, e.g., Interscope Records v. Kimmel, No. 307-CV-0108, 2007 WL 1756383, at *2 (N.D.N.Y. June 18, 2007) (dismissing a counterclaim for declaratory judgment which was redundant of the plaintiff's claim); Sprint Nextel Corp. v. Simple Cell, Inc., No. CIV. CCB-13-617, 2014 WL 883982, at *2 (D. Md. Mar. 4, 2014); see also Marvel Worldwide, Inc. v. Kirby, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010) ("[A] counterclaim is not duplicative or redundant if it asserts an independent case or controversy that survives dismissal of the plaintiff's claim.").

In the present case, the Defendant's declaratory judgment counterclaim is not entirely duplicative or redundant of the Plaintiff's infringement claim. First, the Plaintiff, via its Amended Complaint, seeks

6

certain relief, including injunctive relief, transfer of certain URLs and attorneys' fees.  If the Defendant prevails on these claims, the Court would enter a judgment of dismissal of the Plaintiff's action for infringement.  The Defendant, by its counterclaim, seeks specific relief in the form of a declaration of this Court that it has not infringed on the Plaintiff's trademark.  In light of this disparity of remedies, the Defendant's counterclaim in not the "mirror image" of the Plaintiff's claim.

In addition, the substance of the Plaintiff's infringement claim and the Defendant's non-infringement counterclaim do not precisely overlap.  Prior to filing the underlying lawsuit, the Plaintiff obtained a North Carolina trademark registration for BILTMORE in connection with "clothing, namely women's dresses."  [Doc. 38 at 5-6].  In its Amended Complaint, the Plaintiff alleges that the Defendant's use of BILTMORE in connection with, *inter alia*, women's apparel constitutes infringement of its common law trademark rights.  [Doc. 29 at ¶ 113].  The Plaintiff does not, however, allege that this use also infringes upon its North Carolina trademark.  The Defendant's counterclaim, on the other hand, seeks a declaration of non-infringement as to *any* of the Plaintiff's trademarks or common law rights.  Thus, the Defendant's counterclaim raises an independent controversy regarding the

7

Plaintiff's North Carolina trademark, a controversy which could survive dismissal of the Plaintiff's federal and common law trademark claims.

For these reasons, the Court in the exercise of its discretion shall not dismiss the Defendant's counterclaim for a declaratory judgment of non-infringement.

### B. Chapter 75

The Defendant's Chapter 75 counterclaim is predicated upon allegations that the Plaintiff filed the instant trademark infringement suit knowing its claims to be meritless and with the intent to conceal its attempts to interfere with the Defendant's business and business relationships. [Doc. 34]. In its Motion to Dismiss, the Plaintiff argues that the Defendant's Chapter 75 counterclaim is barred by the Noerr-Pennington doctrine and fails to state a claim upon which relief can be granted. [Doc. 36 at 10].

"The Noerr-Pennington doctrine guarantees citizens their First Amendment right to petition the government for redress without fear of antitrust liability." Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398 (4th Cir. 2001) (citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136-39 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669 (1965)). Pursuant to this doctrine, a claimant who files suit against its competitor is immune to antitrust

counterclaims predicated upon the act of filing that underlying suit. See e.g., IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 310 (4th Cir. 2003); Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56 (1993). Whether the Noerr-Pennington doctrine applies is a question of law. See Prof'l Real Estate, 508 U.S. at 50; Balt. Scrap Corp., 237 F.3d at 404.

The Noerr-Pennington doctrine does not apply, however, if the underlying lawsuit "is a mere sham to cover an attempt to interfere directly with the business relationships of a competitor." Prof'l Real Estate, 508 U.S. at 56 (citing Noerr, 365 U.S. at 144). There is a two-part test for determining whether the suit in question is a sham. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Prof'l Real Estate, 508 U.S. at 60. A lawsuit is not objectively baseless if the filer had "probable cause" to bring suit, which requires "no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." Id. at 62; see also Restatement (Second) of Torts § 675 (1977) (stating that a claimant has probable cause to initiate a lawsuit "if he reasonably believes in the existence of the facts upon which the claim is based, and . . . correctly or reasonably believes that under those facts the claim may be valid under the applicable law . . . .").

9

Only if the court determines that the litigation is objectively meritless may the court proceed to the second part of the inquiry, which requires consideration of the filer's subjective motivation in bringing the suit. Id. Under this second part, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon." Id. at 60-61 (internal quotation marks, alterations, and citations omitted; emphases in original).

North Carolina courts have adopted the principles of the Noerr-Pennington doctrine in the context of Chapter 75 claims, holding that bringing a lawsuit which is objectively reasonable cannot constitute an unfair trade practice under Chapter 75. See Reichhold Chemicals, Inc. v. Goel, 146 N.C. App. 137, 157, 555 S.E.2d 281, 293 (2001) (acknowledging that federal decisions provide guidance in determining the meaning and scope of Chapter 75); accord First Union Nat. Bank v. Brown, 166 N.C. App. 519, 534, 603 S.E.2d 808, 819 (2004). Conversely, courts have held that "the institution of a lawsuit may be the basis for a [Chapter 75] claim if the lawsuit is merely a sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." United

States v. Ward, 618 F. Supp. 884, 907 (E.D.N.C. 1985) (citing Noerr, 365 U.S. 127).

Here, a review of the Plaintiff's allegations lead this Court to conclude that the Plaintiff had at least probable cause to file the underlying suit for trademark infringement. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007) (stating elements of trademark infringement). The Plaintiff alleges in its Amended Complaint that it owns an incontestable trademark for the use of BILTMORE in connection with jewelry, and that the Defendant is also using BILTMORE without the Plaintiff's consent, in commerce, to sell competing jewelry, in a manner that is likely to cause confusion. It is well-settled that a registered trademark owner is entitled to the exclusive use of its trademark in commerce, and is further entitled to bring an action against anyone using that mark in commerce if that use is likely to cause confusion. Brittingham v. Jenkins, 914 F.2d 447, 452 (4th Cir. 1990); KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004). At a minimum, the Plaintiff had cause to believe it has a reasonable likelihood of succeeding on its infringement claim based upon these allegations. See Prof'l Real Estate, 508 U.S. at 62.

Moreover, the Defendant has failed to present plausible factual allegations that "no reasonable litigant could realistically expect success on

the merits" of the Plaintiff's claim. Prof'l Real Estate, 508 U.S. at 60. In fact, the Defendant's allegations and admissions actually tend to substantiate the Plaintiff's position that it has stated a claim on which it may prevail. Regarding the first element of infringement, the Defendant concedes that the Plaintiff owns trademark rights in BILTMORE, particularly in connection with *inter alia*, "selling promotional items." [Doc. 34 at ¶ 33].[1] As to the second element, the Defendant admits that it opened a store called "Biltmore Bride Prom & Tux," that it uses "Biltmore Bride" in answering the phone at this store, and that it sells jewelry in this store. [Id. at ¶¶ 65, 67]. The Defendant further admits that it does not have a licensing agreement with the Plaintiff. [Id. at ¶ 70]. Finally, as to the third element, the Defendant admits that both it and the Plaintiff use BILTMORE in connection with the sale of jewelry, to consumers in common geographic areas, via common advertising channels. [Id. at ¶¶ 83, 85, 87].

---

[1] "At all relevant times hereto, Plaintiff is and has been aware that its trademark rights relating to operating a historic house, gardens, winery, and hotel; offering services relating to receiving guests at, providing tours of, and hosting special events at Plaintiff's historic house, gardens, winery, and hotel; and selling promotional items relating to the Plaintiff's historic house, gardens, winery, and hotel do not extend to retail store services in connection with wedding dresses, prom dresses, tuxedos, and special occasion attire." [Doc. 34 at ¶ 33]. While the Defendant alleges that there is no direct overlap of product lines, this does not preclude the Plaintiff from reasonably claiming a likelihood of confusion or trading on the Plaintiff's name.

In arguing that the Plaintiff's litigation is a sham, the Defendant focuses almost exclusively on the purported unreasonableness of the Plaintiff's assertion that its trademark rights extend to special occasion attire. [See Doc. 38]. As an initial matter, the fact that a claimant is seeking to secure a logical extension of the rights he currently holds does not make his claim a sham. See Balt. Scrap. Corp., 237 F.3d at 400. More importantly, the issue is not whether *all* of the underlying claims are objectively reasonable, but whether it was objectively reasonable for the Plaintiff to initiate this action. Had the Plaintiff asserted an infringement claim based *solely* upon the Defendant's use of BILTMORE in connection with special occasion attire, the Defendant's Chapter 75 claim might hold more promise. In the instant matter, however, it is clear from the pleadings that, at a minimum, the Plaintiff had probable cause to file the underlying suit for trademark infringement.

Based upon the foregoing, this Court concludes as a matter of law that the underlying lawsuit is objectively reasonable within the meaning and application of the Noerr-Pennington doctrine. Consequently, the Plaintiff's filing of this suit is not actionable under Chapter 75. See First Union Nat. Bank, 166 N.C. App. at 534, 603 S.E.2d at 534. Because the Plaintiff's filing of suit is the sole basis for the Defendant's Chapter 75 counterclaim, the counterclaim must be dismissed because, taking the allegations of the

Plaintiff's Amended Complaint and the Defendant's Answer and Counterclaim together, the Chapter 75 counterclaim does not state a claim upon which relief can be granted.[2] Accordingly, the Defendant's Chapter 75 counterclaim shall be dismissed.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Dismiss [Doc. 35] is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Plaintiff's Motion to Dismiss is **GRANTED** with respect to the Defendant's Chapter 75 counterclaim. In all other respects, the Plaintiff's Motion to Dismiss [Doc. 35] is **DENIED**.

**IT IS SO ORDERED.**

Signed: December 30, 2016

Martin Reidinger
United States District Judge

---

[2] In its opposition to the Plaintiff's Motion to Dismiss the Defendant requests, as an alternative to dismissing its Chapter 75 counterclaim, that it be allowed to amend its counterclaim to allege additional unfair and deceptive conduct by the Plaintiff. [Doc. 38 at 12-14]. Ordinarily, leave to amend should be "freely given when justice so requires." Googerdy v. N. Carolina Agr. & Tech. State Univ., 386 F. Supp. 2d 618, 623 (M.D.N.C. 2005) (quoting Fed. R. Civ. P. 15(a)). But where, as here, the leave to amend is sought to circumvent a disposition motion, leave to amend may be properly withheld. Id. Moreover, pursuant to the Local Rules, motions may not be included in responsive briefs. L. Cv.R. 7.1(C)(2). For these reasons, this Court declines to grant the Defendant leave to amend its Chapter 75 counterclaim.